UNITED STATES, Appellee

v.

Christoper A. SMITH, Senior Airman
U.S. Air Force, Appellant.

No. 67,671.
ACM S28574.

U.S. Court of Military Appeals.

Argued Dec. 2, 1992.

Decided April 29, 1993.

For Appellant: *Captain David J. Jividen* (argued); *Major Alice M. Kottmyer* (on brief); *Colonel Jeffrey R. Owens, Lieutenant Colonel Terry J. Woodhouse, Major Mary C. Yastishock.*

For Appellee: *Major Jeffrey C. Lindquist* (argued); *Major Paul H. Blackwell, Jr.* (on brief); *Lieutenant Colonel Brenda J. Hollis* and *Lieutenant Colonel Jeffery T. Infelise.*

---

*Opinion of the Court*

GIERKE, Judge:

Before a special court-martial composed of officer members, appellant was charged with stealing a government computer system, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. He pleaded guilty to the lesser included offense of wrongful appropriation, also in violation of Article 121, but was convicted as charged. The approved sentence provides for a bad-conduct discharge and reduction to the lowest enlisted grade.

We granted review of the following issue:

WHETHER THE MILITARY JUDGE ERRED BY FAILING TO INQUIRE INTO A POTENTIAL CONFLICT OF INTEREST BETWEEN TRIAL DEFENSE COUNSEL'S REPRESENTATION OF APPELLANT AND PRIOR

REPRESENTATION OF A KEY PROSECUTION WITNESS.

The only factual issue at trial was whether appellant intended to deprive the Government of the computer system temporarily or permanently. The prosecution evidence of intent rested heavily on a stipulation of fact, which included the following:

> Some of the software and other related equipment for this computer was obtained from a friend, Sgt Robert Lawrence, another AF active duty service member. The accused initially told Sgt Lawrence that he had received the computer as a gift from his mother; however, he later admitted that he had stolen the computer from the USAF. At no time did the accused ever tell Sgt Lawrence that he intended to return the computer to the USAF.

Prior to arraignment the military judge inquired whether defense counsel had represented any of the witnesses in the case, and the following discussion ensued:

> Yes, sir, I have represented at one point in time a witness who is going to be in the stipulation. So I would guess the answer is, yes. I have discussed that with my client, and he has no objections to my continued representation.

MJ: All right. Is that correct?

ACC: Yes, sir.

\* \* \*

MJ: Prior to this 39(a) Session, there was a brief 802 conference between myself, the trial counsel, the assistant trial counsel, and Capt Cantrall. Capt Cantrall indicated to me at that time that he had represented or was representing a witness who was named in the stipulation which they intend to introduce. And after a brief discussion, I indicated that when we go before the members I will not ask any questions of him with regard to that representation. Is that a fair summarization of the 802?

DC: Fair summary, sir.

ATC: Yes, sir, that is.

MJ: Do either counsel have anything further they wish to put on the record at this point?

DC: No, Your Honor.

ATC: No, sir.

After pleas were entered, the defense objected to "anything mentioning Sgt Lawrence" in the stipulation, on the ground that it was irrelevant, cumulative, and an "exculpatory no." The prosecution theory was that acquisition of software and peripheral equipment from Sgt Lawrence and other sources evidenced appellant's intent to keep the computer permanently.

After overruling the defense objections, the military judge advised the defense—

> Now, you can withdraw the stipulation, we can go back to square one, change the plea, or if you want to come up with another stipulation that would go to the members. That's up to you—that's up to the parties.

The stipulation was then redrafted and again offered by the prosecution. The military judge asked the defense if they had any objections to the new stipulation, "[b]ecause if you're maintaining any objections to the stipulation, I don't think it can be consented to by the accused." The military judge's comment provoked the following colloquy:

> DC: Let me explain my thinking then, sir. We agreed to the stipulation because the facts are true and because we feel that it is in our best interests to have this evidence come out in this manner. Some of the evidence we feel that if a person was brought on would be objectionable. However, what is said is what that person would say, and that is accurate because that is factual. However, some of that evidence we did not feel was admissible.
>
> MJ: Then you don't have to agree to the stipulation.
>
> DC: But, sir, our alternative then is to have the person come on and have the evidence come out in a less favorable manner to my client.

After more discussion, defense counsel informed the military judge that he had "no

objections" to the new stipulation. Appellant expressly agreed to the new stipulation, and it was then received in evidence.

The prosecution also presented appellant's inculpatory statement to the Office of Special Investigations. At defense request and with prosecution agreement, several questions and answers were redacted which pertained to "some of the property or some of the stuff being stolen by Sgt Lawrence." Although the record does not reflect whether Sgt Lawrence was charged with any offenses, the facts as stipulated certainly suggest his culpable involvement in appellant's offenses.

 ·Where there is multiple representation, the military judge must inquire into its propriety. *United States v. Hurtt,* 22 MJ 134, 136 (CMA 1986) (citing *Cuyler v. Sullivan,* 446 U.S. 335, 347, 348, 100 S.Ct. 1708, 1717, 1718, 64 L.Ed.2d 333 (1980)). *See United States v. Davis,* 3 MJ 430, 432–34 (CMA 1977) (military judge has duty to explore potential conflict of interest on the record); RCM 901(d)(4), Discussion, Manual for Courts–Martial, United States, 1984 (military judge should inquire into possible conflict of interest). In order to find a Sixth Amendment violation based on a conflict of interest, we must find (1) that counsel actively represented conflicting interests and (2) that the actual conflict of interest adversely affected counsel's performance. *Mathis v. Hood,* 937 F.2d 790 (2d Cir.1991); *Young v. Herring,* 938 F.2d 543 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1485, 117 L.Ed.2d 627 (1992); *Mannhalt v. Reed,* 847 F.2d 576 (9th Cir.), *cert. denied,* 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 249 (1988). If both prongs are established, prejudice is presumed. *Burger v. Kemp,* 483 U.S. 776, 783, 107 S.Ct. 3114, 3120, 97 L.Ed.2d 638 (1987).

 Exercising our supervisory jurisdiction, we have established a rebuttable presumption that there is an actual conflict of interest whenever there is multiple representation and the military judge has not conducted a suitable inquiry on the record. *United States v. Breese,* 11 MJ 17, 23 (CMA 1981). Because the *Breese* presump-

tion goes only to the first prong, *i.e.,* the existence of an actual conflict of interest, failure to rebut it does not necessarily trigger a presumption of prejudice. The second prong still must be established by the defense. An unrebutted *Breese* presumption is sufficient, however, to require further inquiry.

 Although defense counsel revealed that he had represented Sergeant Lawrence, the record does not reflect the nature and extent of that representation or whether that representation involved a criminal proceeding or was in any way related to appellant's case. Accordingly, we do not have sufficient facts before us to determine whether there was multiple representation and, if so, whether there was an actual conflict of interest. Furthermore, we cannot determine whether counsel's representation of appellant was adversely affected. Further inquiry is required. *See United States v. DuBay,* 17 USCMA 147, 37 CMR 411 (1967) (ordering factfinding hearing on claims of unlawful command influence).

The decision of the United States Air Force Court of Military Review is set aside. The record of trial is returned to the Judge Advocate General of the Air Force for submission to a convening authority who may order a *DuBay* hearing to resolve the question of multiple representation or order a rehearing on the findings and sentence if a *DuBay* hearing is deemed impracticable. If the judge in the *DuBay* hearing determines (1) that there was multiple representation; (2) that there was an actual conflict of interest; and (3) that the conflict of interest adversely affected counsel's representation of appellant, the judge shall set aside the findings and sentence and return the record to the convening authority for a decision whether to order a rehearing on the findings and sentence. If the judge in the *DuBay* hearing finds (1) no multiple representation; or (2) no actual conflict of interest; or (3) an actual conflict of interest but no adverse effect on counsel's representation of appellant, the record will be returned to the Judge Advocate General of

the Air Force for submission to the Court of Military Review for further review under Article 66, UCMJ, 10 USC § 866. Thereafter, Article 67, UCMJ, 10 USC § 867, shall apply.

Chief Judge SULLIVAN and Judge COX concur.

WISS, Judge (concurring):

I concur fully in the opinion and the disposition ordered by the majority. In doing so, however, I want to make clear that I believe that one of the procedural aspects of that disposition potentially raises a number of issues that I expressly reserve for consideration until and unless they become ripe for decision.

I

Part of our mandate today contemplates the contingency that the convening authority orders a limited factfinding hearing under *United States DuBay*, 17 USCMA 147, 37 CMR 411 (1967), and that the military judge conducting that hearing finds no multiple representation or that the presumption of a conflict of interest was rebutted. In that eventuality, we direct that "the record will be returned to the Judge Advocate General of the Air Force for submission to the Court of Military Review for further review under Article 66, UCMJ, 10 USC § 866. Thereafter, Article 67 ... shall apply." 36 MJ at 457–58.

In the course of utilizing the device first articulated in *DuBay, see* Art. 39(a), Uniform Code of Military Justice, 10 USC § 839(a), this Court sometimes has followed the procedure provided by the majority here. *See, e.g., United States v. Lonetree*, 35 MJ 396, 414 (CMA 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1813, 123 L.Ed.2d 444 (1993). Indeed, in *DuBay* itself the Court ordered that, in essence, if the facts found and the legal conclusions reached were adverse to the accused, then the case should perk back up the judicial chain of review, citing Article 66 (although I do note that the decretal provision in that case also ordered that the law officer, now

the military judge, first, would "return the record to the convening authority" for review under Articles 61 and 64, UCMJ, 10 USC §§ 861 and 864, respectively, before the case would be submitted to the Board of Review, now the Court of Military Review). 17 USCMA at 149, 37 CMR at 413.

On the other hand, this Court has sometimes ordered that the case be returned directly to this Court in the circumstance like that set out earlier. For instance, in *United States v. Payton*, 23 MJ 379, 382 (CMA 1987), a unanimous Court ordered that, when the limited hearing is concluded, the military judge "will enter findings of fact and conclusions of law and then return the record and a verbatim transcript of the hearing directly to this Court." Ironically, *Payton* involved an issue of defense counsel's loyalty to his client in his representation—an issue not entirely dissimilar to the issue on which we granted review in this case. The *Payton* decision cited as authority for its disposition the Court's earlier decision in *United States v. Killebrew*, 9 MJ 154, 162 (CMA 1980), where the Court similarly kept a string on the post-hearing treatment of the case; and the Court has followed a similar procedure even in more recent cases, *see, e.g., United States v. Giambra*, 33 MJ 331, 335 (CMA 1991).

II

It seems to me that a rational argument can be made in favor of the latter option. This case, for instance, has received its full, orderly appellate review provided by statute up to this point. On appellant's petition in this Court, we granted review of an issue of law in which *we* now find that more factual development of the record is necessary for *our* resolution. In this posture, it might seem logical that, once that supplementation of the record is accomplished, it then will be this Court's responsibility to resolve the issue of law that led to the hearing in the first place.

At the same time, I am not logically or legally opposed to permitting review in the Court of Military Review in the interim between the *DuBay* limited hearing and

this Court's consideration. This route, however, does raise a number of questions that, at some point, might face this Court (and possibly, even earlier, the Court of Military Review). Those questions all, in one way or another, relate to the scope of review powers of the Court of Military Review at that stage.

For instance, may appellant raise in that court any legal, factual, or sentence-appropriateness issue that he could have raised the *first* time in that forum? Or, instead, is appellant limited to issues related to the factual hearing ordered here? If the latter, what is the language in Article 66 to support such a limited review by that court; if the former, what is the logic in an appellate process that permits an appellant two full-blown opportunities to attack his conviction or his sentence?

Moreover, what, if any, restrictions exist at that stage on the Court of Military Review's factfinding powers under Article 66? Does that court's power to review facts de novo extend to *all* facts, even those relating only to satellite litigation like the limited hearing ordered here (or, indeed, to satellite litigation at an *original* trial, such as evidentiary objections or motions)? Or, instead, does Article 66 empower that court with such authority only as to facts relating directly to an accused's guilt? *Cf.* Art. 62, UCMJ, 10 USC § 862 (In an appeal by the United States from a military judge's order or ruling "which terminates the proceedings with respect to a charge or specification or which excludes evidence that is substantial proof of a fact material in the proceedings, ... the Court of Military Review may act only with respect to matters of law, notwithstanding section 866(c) of this title (article 66(c))."). *See* Art. 62(a)(1) and (b).

These questions are difficult ones, and they are questions that seemingly inevitably will arise, either at some stage of this case's further development or in some similar case. Recognizing the potential for future litigation of these issues, though, I concur.

CRAWFORD, Judge (concurring in the result):

The majority orders a hearing under *United States v. DuBay*, 17 USCMA 147, 37 CMR 411 (1967). One has to ask who has the information to be obtained at the *DuBay* hearing, and the answer is defense counsel, appellant, and Sergeant Lawrence. One must further ask why couldn't that information be obtained in the first instance at the first appellate level, rather than now at a *DuBay* hearing. Even in the most sensitive defense of mental responsibility, the burden is placed upon the defense because generally that is the party with the evidence. Art. 50a(b), Uniform Code of Military Justice, 10 USC § 850a(b).

In effect, rather than requiring the defense to demonstrate an actual conflict at the Court of Military Review, we have allowed the issue to pass through that court to this Court, back to a *DuBay* hearing to determine what the defense already knew, then to the Court of Military Review again and, finally, back to this Court. Four of those five levels of review are not necessary.

Since this Court exercised its supervisory jurisdiction in *United States v. Breese*, 11 MJ 17, 22 (CMA 1981), relying on *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the Supreme Court and the federal courts of appeals have clarified the rules regarding counsel's multiple representation of clients and issues of conflict of interest arising therefrom.

In *Cuyler*, the Court held that a prisoner may seek habeas corpus relief if his counsel was ineffective when representing a conflicting interest and that "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." It reiterated the principle that multiple representation does give rise to a possibility of improper conflict of interest and that "a defendant who objects to multiple representation must have the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial." *Id.* at 348, 100 S.Ct. at 1718. The Court

created a limited presumption of prejudice only if the defendant demonstrates that "counsel actively represented conflicting interests" and repeated that "a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 349–50, 100 S.Ct. at 1719. This language suggests that a defendant must show that there was (1) an actual conflict as well as (2) an adverse effect. Since our decision in *Breese,* the Supreme Court has indicated that there is indeed a two-prong test that must be satisfied.

The two-prong test was established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), when the Court rejected a *per se* rule of presumed prejudice for all conflicts of interest, holding instead: "Prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' *and* that 'an actual conflict of interest adversely affected his lawyer's performance.'" 466 U.S. at 692, 104 S.Ct. at 2067, citing *Cuyler v. Sullivan,* 446 U.S. at 348, 350, 100 S.Ct. at 1718, 1719. Also, in *Burger v. Kemp,* 483 U.S. 776, 783, 107 S.Ct. 3114, 3120, 97 L.Ed.2d 638 (1987), the Supreme Court held:

> [W]e presume prejudice "only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'"

In line with *Cuyler, Strickland,* and *Burger,* the United States Courts of Appeals have applied a two-prong test. In

* More than 60 cases in all the circuits follow a similar rationale. *See, e.g., Mathis v. Hood,* 937 F.2d 790, 795 (2d Cir.1991); *United States v.*

*Mannhalt v. Reed,* 847 F.2d 576, 579 (9th Cir.), *cert. denied,* 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 249 (1988), a showing was required "1) that counsel actively represented conflicting interests, and 2) that an actual conflict of interest adversely affected [counsel's] performance." *See Morris v. California,* 966 F.2d 448, 455 (9th Cir. 1991).

Likewise, in *Young v. Herring,* 938 F.2d 543, 561 (5th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1485, 117 L.Ed.2d 627 (1992), the Fifth Circuit determined: *

> In order to find a Sixth Amendment violation based on a conflict of interest, the reviewing court must find (1) that counsel actually represented conflicting interests, and (2) that an actual conflict of interest adversely affected the attorney's performance.

In this case, there was no actual conflict of interest affecting counsel's performance. Counsel candidly admitted on the record that he did not intend to call Sergeant Lawrence as a witness because appellant was better off if Lawrence was never called. Where counsel's actions actively benefit his client, obviously counsel's performance has not been adversely affected by the conflict of interest.

Since the requirement to prove both an actual conflict of interest and an adverse impact on counsel's performance is a change from our prior practice, I concur with the majority's view that a remand is appropriate in this case. However, I would require counsel to comply with the new two-prong test prospectively.

*Contractor,* 926 F.2d 128, 134 (2d Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 123, 116 L.Ed.2d 91 (1991).