## UNITED STATES

v.

## Technical Sergeant Donald L. TRIPP, FR544–68–1243, United States Air Force.

## ACM 30074.

U.S. Air Force Court of Military Review.

Sentence Adjudged 16 June 1992.

Decided 20 Sept. 1993.

---

Appellate Counsel for the Appellant: Colonel Terry J. Woodhouse, Major Mary C. Yastishock, and Captain David D. Jividen.

Appellate Counsel for the United States: Colonel Richard L. Purdon, Colonel Jeffery T. Infelise, and Captain Jane M.E. Peterson.

Before SNYDER, JAMES, and JOHNSON, Appellate Military Judges.

## OPINION OF THE COURT

JAMES, Senior Judge:

Sergeant Tripp was convicted of committing indecent acts.[1] On appeal, he asks that we remand his case for an inquiry to determine whether the trial defense counsel had a conflict of interests,[2] and he contends that the convening authority's action violated R.C.M. 1108 and their pretrial agreement. He also contends that the dishonorable discharge adjudged should be disapproved because he misunderstood the pretrial agreement.[3] The issue relating to the convening authority's action has merit and requires us to return the case to the convening authority for a new action.[4] First, however, we address Sergeant Tripp's plea for a remand.

## I. Remands for Fact–Finding

There is no doubt that we have authority to remand a case for fact-finding. *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411, 413 (1967); R.C.M. 1102(d). Our precedents citing the famous *DuBay* decision are now too numerous to summarize, but we are acquainted with no decisions among them that consider any comprehensive framework for determining when a remand for fact-finding may be or should be ordered. The result of this unfortunate silence is that many appellants come to us with pleas that we help them investigate their cases by ordering the hearing, but they rarely present persuasive cases because we have not told them what constitutes good cause for such a hearing. Thus the hopes of many an appellant are doomed to be dashed and their time (and ours) wasted. It is time to begin articulating when a remand for a fact-finding hearing is appropriate.

Several elements of the test are implicit in any occasion on which the hearing has been ordered.[5] First, there must be some issue presented to us by the record or by

---

1. A violation of Article 134, UCMJ, 10 U.S.C. § 934 (1988); *see* MCM, Part IV, paragraph 87 (1984). Sergeant Tripp was sentenced to be discharged from the service with a dishonorable discharge, to be confined for 3 years, and to be reduced to E–3. The convening authority approved the sentence as adjudged but suspended the reduction, a topic to which we return below.

2. Our attention is brought to this issue pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982).

3. Our attention is also brought to this issue pursuant to *Grostefon,* 12 M.J. 431.

4. Sergeant Tripp also contends that the appointments of the military judge and the judges of this Court violated the Appointments Clause of the Constitution and that he was and is being denied due process because the military judge and the judges of this Court do not have the protection of fixed terms. These assignments have been settled, and no relief is warranted. *United States v. Weiss,* 36 M.J. 224 (C.M.A.1993), *cert. granted,* — U.S. —, 113 S.Ct. 2412, 124 L.Ed.2d 635 (1993); *United States v. Graf,* 35 M.J. 450 (C.M.A.1992), *cert. granted sub nom. Weiss v. United States,* — U.S. —, 113 S.Ct. 2412, 124 L.Ed.2d 635 (1993). We do not address them further.

5. Several of the elements listed above emerge from one sentence in a recent decision of the Court of Military Appeals: "The first granted *issue,* concerning ineffective assistance of counsel *requires* answers to certain *factual questions* which are not clear from the *record* before us." *United States v. Wean,* 37 M.J. 286, 287 (C.M.A. 1993) (emphasis added). The same opinion continued elsewhere: "Moreover, in view of the inadequate or nonresponsive affidavits of defense counsel already filed in this case, the Court of Military Review should order an evidentiary hearing ... or order additional affidavits...." *Id.* at 288 (citations omitted).

the appellant.[6] Second, the issue must be one for which the scope of review permits resort to matters outside the record under review, if necessary.[7] Third, the issue must be justiciable: if it is moot, if the appellant lacks standing to assert the rights involved, or if the issue is not yet ripe, then a remand would be wasteful. Fourth, the issue must be presented in such a way that resolution depends at least in part upon facts. Fifth, those facts must not yet be clear in the record.[8] Sixth, the needed facts must be such that resort to affidavits would be unsatisfactory.[9] Seventh, the movant must establish that a fact-finding hearing is likely to be effective, that the facts can be found, or that the likely ineffectiveness of the hearing is itself conclusive. There is no point in diverting a case from the appellate march if there is nothing to be gained by the side trip. These points must be shown to us in a rational and concrete way, and mere forensic enthusiasm cannot be enough.[10]

## II. Conflict of Interests

Sergeant Tripp complains on appeal that his defense counsel was disciplined for doing civilian business in his military office and that his counsel later practiced law in the same civilian office in which the trial counsel also practiced. Sergeant Tripp argues that his lawyer *"may* have been distracted by his own personal problems," and this implies that his lawyer might have shared a business interest with the trial counsel related to their mutual, future, civilian employment.

■ Sergeant Tripp's assignment about conflicts of interests involves complexities of which he is clearly unaware, for the analysis includes a series of steps and the possibility of favorable presumptions. A due process violation exists where both parts of this test are satisfied:

1. Counsel "actively represented conflicting interests."

2. The conflicts adversely affected counsel's performance.

*United States v. Smith,* 36 M.J. 455, 457 (C.M.A.1993). The third step—prejudice—is avoided because prejudice is presumed if the first two are satisfied. *Id.* We see no logical reason why this analysis should not be like that in ineffectiveness cases under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in that our analysis may proceed on either

---

6. *See, e.g., United States v. Mabe,* 28 M.J. 326 (C.M.A.1989) (circumstances of creation of letter became pertinent after an incomplete copy of the letter was included in the record); *United States v. Acton,* 33 M.J. 536 (A.F.C.M.R.1991) (record and allied papers strongly suggested that defense counsel had withdrawn unilaterally).

7. *See United States v. Parker,* 36 M.J. 269, 272 (C.M.A.1993).

8. *See, e.g., Mabe,* 28 M.J. 326. In this connection we note that we have been generous in permitting the records before us to be supplemented on appeal by affidavits, by judicial notice, and by appendices such as learned treatises and similar works of generally accepted reliability, and recently we have encouraged appellate counsel to consider stipulations of such facts. We also note that a remand for fact-finding should not be used to rescue a party from the consequences of its failure to meet its burden at trial. *See, e.g., United States v. McFarlin,* 24 M.J. 631, 633 n. 5 (A.C.M.R.1987). Similarly, a remand for fact-finding is inappropriate when the issue under consideration must be decided on the basis of the record as it stands. *See, e.g., United States v. Baum,* 30 M.J. 626, 630 n. 8

(N.M.C.M.R.1990) (review of a trial judge's decision on a challenge for cause is decided upon the voir dire he heard). Finally, a skimpy record that supplies the needed facts is good enough and need not be augmented by a remand. *See, e.g., United States v. Jacobs,* 31 M.J. 138, 145 (C.M.A.1990), *cert. denied,* 498 U.S. 1088, 111 S.Ct. 966, 112 L.Ed.2d 1053 (1991).

9. *See United States v. DuBay,* 17 U.S.C.M.A. 147, 37 C.M.R. 411, 413 (1967).

10. We recognize that the foregoing test may be stated here for the first time, but we think that it adds nothing to the law other than to extract some of its elements and state clearly what we suspect we have left implicit for many years. Indeed, the more likely problem is that there are elements which we should have included today but have not. We leave to future cases the restatement of this analysis in ever improving form, as is the inevitable task of common law developments. Our point today is simpler: The movant bears some burden of showing good cause for a remand, and Sergeant Tripp's plea does not meet that burden on the first element, that an issue is presented by the record.

prong in any order, and the failure of either defeats relief. Thus, we could ask rhetorically how the lawyer's performance was affected and, finding no effect to have been shown, deny relief. However, this case gives us a chance to point out that an appellant has some burden to show facts sufficient to put even this issue into controversy.

■ Sergeant Tripp's appellate lawyers bring our attention to *United States v. Smith*, 36 M.J. 455 (C.M.A.1993), in which we are reminded that the first prong of the test—actual conflict—may be satisfied by a presumption (albeit rebuttable) in some instances. In *Smith*, the presumption was supplied by *United States v. Breese*, 11 M.J. 17 (C.M.A.1981), which holds that actual conflict is presumed in joint representation cases in which the military judge fails to make the inquiry required originally by *United States v. Davis*, 3 M.J. 430 (C.M.A.1977), and now by R.C.M. 901(d)(4). The *Smith* analogy is even more appealing to the defense because "[a]n unrebutted *Breese* presumption is sufficient ... to require further inquiry," by, e.g., a remand for a post-trial fact-finding session. *Smith*, 36 M.J. at 457.

That is exactly what Sergeant Tripp asks, but his case does not fit the *Smith–Breese* mold because it does not involve joint or multiple representation, in which the numerous opportunities for conflicts in trial strategy and tactics warrant great care. *See* Allan L. Schwartz, Annotation, *Circumstances Giving Rise to Conflict of Interest Between or Among Criminal Co-defendants Precluding Representation by Same Counsel*, 34 A.L.R.3d 470 (1970). Thus, we must look further to see what kind of circumstances require the remand for fact-finding that Sergeant Tripp hopes will result in proof of his suspicion. There are many, perhaps endless formulae by which a conflict of interests may arise,[11] but we are looking for one in which the lawyer's private interests compete with those of his client. We find very little help

in the military precedents, probably because military lawyers rarely are exposed to the kind of temptation to which Sergeant Tripp says his lawyer was exposed. However, we have come very close to finding an identical model in *Wood v. Georgia*, 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981).

Wood and several co-defendants were employees of the Plaza Adult Bookstore. Accused of distributing obscene material, they were defended by a lawyer hired by the store. On appeal they claimed that the lawyer had divided loyalties, and the Supreme Court did for Wood what Sergeant Tripp asks of us: it remanded for fact-finding. Notable in Wood's case, however, is the Court's expectation that an actual conflict would be found, based on the record before it. It found "the possible due process violation apparent on the particular facts," *Wood*, 450 U.S. at 264–65, 101 S.Ct. at 1099–1100, and "strongly suggest[ed]" by the record, 450 U.S. at 273, 101 S.Ct. at 1104. Thus, the Supreme Court treated a third-party employer situation differently from joint representation cases.

Though we are asked frequently to remand for fact-finding, we do so in relatively few cases. There must be some sound reason to delay a case in its march toward finality. As we outlined above, we follow a course much like that in *Wood:* there must be something in the record (including supplements thereto) which "strongly suggests" that the suspected events are true, or that their probability is "apparent" on the face of the record (as supplemented).

In short, an appellant must show some good cause for the remand. Mere suspicion is not enough, and unsworn averments of suspicions based on hearsay without investigation are not enough. That is all we have here. The record suggests no conflict of interests and no deficiency in the performance of the lawyer. Thus, no such issue is put into controversy, and the first ele-

---

11. *See generally* Gregory G. Sarno, Annotation, *Circumstances Giving Rise to Prejudicial Conflict of Interests Between Criminal Defendant and Defense Counsel—Federal Cases,* 53 A.L.R.Fed.

140 (1981); Anon., Annotation, *What Constitutes Representation of Conflicting Interests Subjecting Attorney to Disciplinary Action,* 17 A.L.R.3d 835 (1968).

ment of the remand analysis is unsatisfied. Nothing makes us confident that a remand would be other than a waste of time and resources, and we refuse to order one.

### III. The Action

■ Sergeant Tripp pleaded guilty in accordance with a pretrial agreement that included the following sentence limitation:

Any adjudged forfeitures, fine and/or reduction in rank from the current rank of technical sergeant shall be suspended. This suspension shall last until the completion of the confinement or the approval and execution of any adjudged punitive discharge or until the accused separates from the Air Force under any circumstances, whichever comes first. Said suspension is contingent upon the accused creating and maintaining an allotment in the amount of 90% of basic pay and allowances to [Mrs.] Tripp for the use and benefit of her and her children as outlined in the offer for pretrial agreement. This agreement for suspension is done pursuant to R.C.M. 1108.[12]

The military judge sentenced Sergeant Tripp to be discharged from the Air Force with a dishonorable discharge, to be confined for 3 years, and to be reduced to E–3. The convening authority took the following action:

[T]he sentence is approved and, except for that part of the sentence extending to a dishonorable discharge, will be executed, but the execution of that part of the sentence adjudging reduction to the grade of E–3 is suspended until the completion of the confinement or the approval and execution of the dishonorable discharge or until the accused separates from the Air Force under any circumstance, whichever comes first, at which time, unless the suspension is sooner vacated, the suspended part of the sentence will then be *executed.*

(Emphasis added.)

■ Sergeant Tripp argues that the convening authority's action violates R.C.M. 1108 and the terms of the pretrial agreement by ordering the execution of the adjudged reduction at the end of the suspension period.[13] The government concedes that the action violates R.C.M. 1108 and should be set aside. We agree. R.C.M. 1108(d) states, "The convening authority shall provide in the action that unless the suspension is sooner vacated, the expiration of the period of suspension shall *remit* the suspended portion of the sentence." (Emphasis added.) *See also* R.C.M. 1108(a) ("upon the accused's successful completion

12. The language quoted above is from appendix A to the offer for pretrial agreement (appellate exhibit III), the part not examined by a trial judge until after a sentence has been adjudged. The part of the offer for pretrial agreement (appellate exhibit II) referred to in the sentence limitation quoted above states:

I further agree, ..., to immediately execute an allotment of 90% of my basic pay and allowances, ..., said allotment to be for the use and benefit of my wife and children and to continue through the length of my confinement, or until any adjudged punitive discharge is approved and executed ..., or until I separate from the Air Force under any other circumstances, whichever comes first. I further agree that if at any time after the execution of this agreement, should I terminate or reduce this allotment in any way, the officer then exercising general court-martial jurisdiction over myself may vacate *the suspension of any adjudged forfeitures, fine and/or reduction in rank,....*

(Emphasis added.) The offer is examined by the trial judge during the inquiry into providence of the pleas, and this language had the practical effect of informing the military judge, before he adjudged a sentence, that any forfeitures, fine, or reduction in rank he might impose would be suspended by the convening authority. While a military judge in a judge alone trial *should* not examine any sentence limitation contained in the agreement until after he announces the adjudged sentence, such an examination is not prohibited. *See United States v. Villa,* 19 U.S.C.M.A. 564, 42 C.M.R. 166 (1970); *United States v. Green,* 1 M.J. 453 (C.M.A.1976); *United States v. Phillipson,* 30 M.J. 1019 (A.F.C.M.R.1990), *pet. denied,* 32 M.J. 302 (C.M.A.1991); R.C.M. 910(f)(3).

13. One shudders at the thought of explaining how this action came to pass. It is possible in this era of word-processing that a clerical worker simply left or chose the wrong word. It is also possible that the convening authority intended to defer execution of the reduction. We find no authority for deferring execution of a reduction. *Cf.* Article 57(c) (effective dates) & (d) (deferment of confinement), UCMJ, 10 U.S.C. § 857(d) (1988); R.C.M. 1101(c) (deferment of confinement).

of [the probationary period] the suspended part of the sentence shall be remitted."); R.C.M. 1108(e) ("Expiration of the period provided in the action suspending a sentence or part of a sentence shall remit the suspended portion unless the suspension is sooner vacated.").

This leaves us with the thorny question of how to address the error. There is precedent for some appellate repair work on defective actions. *See, e.g., United States v. Yarbrough,* 36 M.J. 1071, 1074 (A.C.M.R.1993) (all ambiguities created by action inconsistent with pretrial agreement were resolved in favor of the accused). This would be especially appropriate where there could be only one reasonable interpretation of an ambiguity in the action. *See United States v. Loft,* 10 M.J. 266 (C.M.A.1981) (supervisory authority in pre–1984 case corrected ambiguous action); *cf. United States v. Otero,* 26 M.J. 546, 548–49 (A.F.C.M.R.1988) (ambiguous action remanded for correction). That method has superficial appeal here, for the only lawful responses to the present error is to change "executed" to "remitted" or disapprove the reduction altogether.

However, what we have not found is any instance in which the ambiguity arises from a provision suspending part of a sentence. We have no authority to suspend, *United States v. Simmons,* 2 U.S.C.M.A. 105, 6 C.M.R. 105 (1952): that authority is exclusively within the discretion of the convening authority, *see* Article 64(c)(1)(B), UCMJ, 10 U.S.C. § 864(c)(1)(B) (1988). Though this convening authority was obliged to at least suspend the reduction, he had authority to be more generous and to disapprove it and perhaps to mitigate it. We are unable to determine whether the error was clerical or resulted from the convening authority's intent to do something he mistakenly believed he could do, and we are unable to determine how he would have acted on the sentence had he known. Thus, this is not a case in which there can be only one interpretation of the intended result, but it is a case in which the discretion of the convening authority exceeds our own and must be respected. Ac-

cordingly, the convening authority's action must be vacated.

We noted above that Sergeant Tripp's generalized concerns about the possibility that his defense counsel suffered a conflict do not put that issue into controversy, and nothing in the record suggests the existence of a conflict. Under the circumstances of our remand, Sergeant Tripp has an opportunity to provide the convening authority whatever factual support may exist for his assertion that an inquiry is necessary. While Sergeant Tripp has no *right* to have additional matters considered by the convening authority, the existence of factual support for his assertion might persuade the convening authority to consider whether a further inquiry is appropriate. *See* R.C.M. 1102. The "initial action" having been vacated, the convening authority has the discretion to order a post-trial session if he finds that appropriate, R.C.M. 1102(b)(2) and (d), and such a finding would likely be economical if good cause is shown.

The convening authority's action is vacated, and the record is remanded to the convening authority for a new action.

Senior Judges SNYDER and JOHNSON concur.