UNITED STATES

v.

Captain James RUIZ, 571–29–5369,
United States Air Force.

ACM 31955.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 28 April 1995.

Decided 3 March 1997.

Cohen, Colonel David W. Madsen, and Mr. Freddy B. Ruiz.

Appellate Counsel for the United States: Captain Mitchel Neurock (argued), Colonel Theodore J. Fink, Lieutenant Colonel Michael J. Breslin, and Major Dixie A. Morrow.

Before PEARSON, MORGAN, C.H., II, and MORGAN, J.H., Appellate Military Judges.

## OPINION OF THE COURT

MORGAN, J.H. Judge:

Court members found appellant guilty of adultery and fraternization, and sentenced him to a dismissal and a reprimand. Appellant raises numerous assignments of error, one of which merits prolonged discussion. Finding against appellant on all issues, we affirm.

### Facts

During the period from November 1993 to July 1994, appellant fraternized with A1C B by allowing her to live in his house and to call him by his first name, writing poetry and cards to her, and entering into an emotional and sexual relationship with her. From January to July 1994, appellant also committed adultery with A1C B on numerous occasions. Appellant was the hospital section commander during much of this period and A1C B was a member of his unit.

Appellant admitted to the underlying conduct in his statement to the Air Force Office of Special Investigations. At trial, the military judge denied appellant's multiplicity motion to combine the adultery and fraternization specifications. Appellant litigated his guilt on the adultery and part of the fraternization.

Appellant pled guilty to fraternization except for the period of time he was no longer A1C B's unit commander, arguing that he could not be guilty of fraternization without a command relationship. At all times in question, appellant was serving as honor guard commander and A1C B was a member of the honor guard. He argued that his status as honor guard commander was not sufficient to provide the command or supervisory relationship needed to establish fraternization.

---

Appellate Counsel for Appellant: Captain W. Craig Mullen (argued), Colonel Jay L.

The military judge also submitted this issue to the members as a factual question and provided them a definition of command and supervision. The members convicted appellant of both offenses as charged.

### Assignments of Error

Appellant asserts the following errors: **I.** The military judge erred by failing to make trial counsel state a gender-neutral reason for his peremptory challenge of a female member; **II.** The military judge abused his discretion by denying a challenge for cause against Lieutenant Colonel (Lt Col) H and Lt Col T; **III.** Lt Col H made substantial misrepresentations during voir dire; **IV.** The convening authority erred by failing to grant a post-trial session to investigate the alleged misconduct of Lt Col H; **V.** The convening authority improperly picked court members by using commander status and rank as selection criteria; **VI.** The staff judge advocate improperly excluded officers from appellant's unit from the list of court nominees; **VII.** The evidence is factually and legally insufficient on both offenses to support appellant's conviction; **VIII.** The staff judge advocate's recommendation failed to address matters submitted by appellant and omitted appellant's character of service. We will address these claimed errors, some of which overlap, below.

### I. Failure to Require Gender–Neutral Reason for Peremptory Challenge of Female Court Member

The trial counsel used his peremptory challenge against Major H, the only female court member. Civilian defense counsel asked the judge to require trial counsel to state a gender-neutral reason for his challenge, citing *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The military judge correctly observed that *Batson* dealt with race-based challenges and not gender but gave the defense a chance to find other authority during an overnight recess. The next morning, the defense cited *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), as authority for requiring a gender-neutral basis for peremptory challenges. However, defense counsel could not provide a copy of the case. The military judge granted a recess to allow the parties and himself to look for a copy of the case, but in an overseas location with limited research materials available, neither the parties nor the judge could locate a copy. Thus, unable to read the holding of *J.E.B.,* or any other case requiring a gender-neutral basis for peremptory challenges in courts-martial, the judge denied appellant's request and did not require trial counsel to explain his challenge.

In *J.E.B.,* the state used 9 of its 10 peremptory challenges to remove male jurors, while the respondent used all 10 of his peremptory challenges to remove women. The suit sought to establish respondent's paternity and responsibility for child support. The Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment prohibits discrimination in jury selection on the basis of gender, or on the assumption that an individual will be biased in a particular case solely because that person happens to be a woman or a man. *J.E.B.,* 511 U.S. at 145–46, 114 S.Ct. at 1430.

The Court stated that, as with race-based claims under *Batson,* the party alleging gender discrimination must make a *prima facie* showing of intentional discrimination before the party exercising the challenge is required to explain the reason for the strike. *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723. The explanation "need not rise to the level of a 'for cause' challenge; rather, it must merely be based on a juror characteristic other than gender, and the proffered explanation may not be pretextual." *J.E.B.,* 511 U.S. at 145, 114 S.Ct. at 1430. The Court said that "failing to provide jurors the same protection against gender discrimination as race discrimination could frustrate the purpose of *Batson.* Because gender and race are overlapping categories, gender can be used as a pretext for racial discrimination." *Id.* The Court applied this rule to potential jurors in both civil and criminal trials, and spoke in terms of "the right of jurors, as well as litigants, to have an equal protection right, under the Fourteenth Amendment to the Constitution, to jury selection procedures that are free from state-sponsored group stereotypes rooted in, and reflective of, his-

torical prejudice." *J.E.B.*, 511 U.S. at 128, 114 S.Ct. at 1421 (citations omitted).

We now face the question of the extent to which *J.E.B.* can or should be applied to trial by courts-martial. While a trial by court members has some attributes similar to a trial by jury, courts-martial have never been considered subject to the jury-trial demands of the Sixth Amendment of the Constitution. *Ex parte Quirin*, 317 U.S. 1, 40, 63 S.Ct. 2, 16–17, 87 L.Ed. 3 (1942); *United States v. McClain*, 22 M.J. 124, 128 (C.M.A.1986). The convening authority appoints members to courts-martial following the statutory requirement that he select those officers best qualified for court-martial duty by reason of age, education, training, experience, length of service, and judicial temperament. Article 25(d)(2), UCMJ, 10 U.S.C. § 825(d)(2).

This is conceptually much different than the jury selection process, where a venire is normally produced at random from voting registration or property tax records and then reduced substantially through an extensive number of peremptory challenges. Civilian juries should represent a cross section of their communities, and attempts to systematically exclude members of an identifiable group from jury service are subject to challenge. Since there is no correlative right to sit on a court-martial, we question the need to protect appointed military court *members* from the type of possible discrimination the Supreme Court was addressing for civilian jurors in *J.E.B.*

The composition of court-martial membership is also likely to reflect the skewed percentage of men and women serving in the military. Civilian jury pools can be expected to begin with a roughly equal mix of men and women, and it would not be unusual to find, on occasion, a majority of women serving on civilian juries. With the military composed of less than 20 percent women, typically few female members are on court panels, and at times none at all.

In the civilian system, peremptory strikes are used to winnow potential jurors from a larger pool during a process of picking a final jury of 12 or fewer people. By contrast, in a court-martial, the court members appointed to serve are the final panel, subject to challenge for cause and only one peremptory challenge by each side. When members are removed, new members are not appointed unless the court membership falls below the statutory minimum of five in general courts-martial or three in special courts-martial. Article 16, UCMJ, 10 U.S.C. § 816. These minimum required numbers themselves are strikingly lower than the normal 12–member civilian federal jury.

Since it is clear that trial by court-martial members does not derive from the Sixth Amendment right to trial by jury, do the rules regarding gender-neutral juror challenges set down by the Supreme Court in *J.E.B.* necessarily apply to courts-martial? At present we have no guidance from our superior court on this issue. The Court of Military Appeals, now the Court of Appeals for the Armed Forces, first applied the reasoning of *Batson* to courts-martial in *United States v. Santiago–Davila*, 26 M.J. 380 (C.M.A.1988), three years after the Supreme Court's decision. The Court stated that the rule in *Batson*

> is not based on a right to a representative cross-section on a jury but instead on an equal protection right to be tried by a jury from which no "cognizable racial group" has been excluded. The right to equal protection is a part of due process under the Fifth Amendment, and so it applies to courts-martial, just as it does to civilian juries.... Furthermore, even if we were not bound by *Batson*, the principle it espouses should be followed in the administration of military justice. In our American society, the Armed Forces have been a leader in eradicating racial discrimination. With this history in mind, we are sure that Congress never intended to condone the use of a government peremptory challenge for the purpose of excluding a "cognizable racial group." (citations omitted)

*Santiago–Davila*, 26 M.J. at 389–90.

A year later, the Court of Military Appeals adopted a *per se* rule for some *Batson* type challenges to simplify the process, recognizing the difficulty of establishing a pattern of discrimination from the use of one peremptory challenge. Any peremptory challenge by

the government of a member **of the accused's race,** upon objection, must be explained by trial counsel. *United States v. Moore,* 28 M.J. 366, 368 (C.M.A.1989).

In appellant's case, the government used its one peremptory challenge to remove the only female member from the trial of a male accused. A *per se* rule similar to that in *Moore* is problematic. Requiring a gender-neutral explanation for the challenge of a man in a predominantly male court, where the accused is also a man, would approach absurdity. On the other hand, it makes more sense to apply *J.E.B.* for a female accused if the government used its peremptory challenge on the only female member of the panel.

In fact, a *per se* rule requiring either party in a court-martial to provide a gender-neutral reason for its single peremptory challenge would obliterate the crucial need, recognized by the Supreme Court in *J.E.B.,* for a *prima facie* showing of intentional gender discrimination before the party exercising the challenge is required to explain the basis for the strike. *J.E.B.,* 511 U.S. at 143–44, 114 S.Ct. at 1429. We may apply the reasoning of *J.E.B.,* without taking on processes which make no sense in the context of a court-martial.

The Navy–Marine Corps Court of Criminal Appeals has held that gender-based discrimination in the exercise of a peremptory challenge, even by an accused, is impermissible. *United States v. Witham,* 44 M.J. 664 (N.M.Ct.Crim.App.1996). In that case, the defense counsel attempted to use his peremptory challenge to remove the only female member from the court in the case of a male accused. Trial counsel requested that the military judge require the defense to specify a gender-neutral reason for the challenge. The military judge asked the defense if gender had entered into the decision. Defense counsel replied that it had and provided no other basis for the peremptory challenge. The judge found the defense's challenge improper and denied it. He allowed the defense to exercise its peremptory challenge against another member. The court was not faced with, nor did it decide, the circumstances under which a military judge ought

to require an explanation. (Although this was a trial for rape and the accused's challenge of a woman lent itself to a reasonable basis to expect that gender played a role.)

▮▮▮ Consistent with the Supreme Court's holding in *J.E.B.,* we agree with our Navy–Marine Corps brethren that gender-based discrimination is an impermissible factor in the selection of, or challenge to, court-martial members. However, a party who objects on that basis must first make a *prima facie* showing of intentional discrimination before the party exercising the challenge is required to explain the basis for it. There must be some reason to suspect gender discrimination based upon the context of the case, the constituency of the court, or the identity of the parties, victim, or witnesses. When an explanation is required, it need not rise to the level of a challenge for cause. The explanation must be based on a juror characteristic other than gender, and may not be pretextual. *J.E.B.,* 511 U.S. at 143–46, 114 S.Ct. at 1429–30.

▮▮▮ A military accused has an equal protection right, based on the due process requirement of the Fifth Amendment, to be tried by a court from which no gender has been **improperly** excluded. *See Santiago–Davila,* 26 M.J. at 390. Likewise, the accused may not exercise his or her peremptory challenge in a gender discriminatory manner, nor can gender be employed in court-martial member selection to achieve a particular result. *United States v. Smith,* 27 M.J. 242, (C.M.A.1988). Similar to the Court's reasoning in *Santiago–Davila,* the armed services have been a leader in eradicating sexual discrimination as well as racial discrimination. The basic principle espoused by *J.E.B.* should apply to the administration of military justice.

It is important to understand that our holding does **not** create a right to a representative cross section of the military population on court panels, nor does it create a right to serve on courts-martial. *Santiago–Davila,* 26 M.J. at 389. While Article 25, UCMJ, cannot be read to countenance gender or race-based discrimination, it also cannot be read to give any individual or group

the right to serve on a court-martial. By Congressional mandate, the convening authority must make that decision based on clearly established statutory criteria. Further, while realizing it may be difficult at times for a party claiming gender discrimination to make a *prima facie* showing of intentional discrimination, we decline to adopt a *per se* rule in this area, preferring to leave that decision to the sound discretion of the trial judges, trusting that in close cases they will err on the side of requiring an explanation.

■ Despite government counsel's initial concession, we hold that the military judge did not err by failing to require trial counsel to provide a gender-neutral reason, because appellant failed to make out a *prima facie* case. There was nothing in the context of this case to suggest gender was the basis for trial counsel's peremptory challenge. In fact, common sense would suggest that the government would usually wish to keep the only female member on the case of a male accused with a female "victim."

■ · Even if appellant had made a *prima facie* case, we are satisfied that the government-provided affidavit of the trial counsel contains a well reasoned non-gender basis for the peremptory challenge. The challenged member, Major H, was a contracting officer. Trial counsel, in years of experience as a trial counsel, had formed the opinion that contracting officers tended to hold the government to a higher standard of proof. Based on this assessment, he decided to challenge Major H. Trial counsel's affidavit provides a proper non-gender basis for his peremptory challenge which not does not appear to be a mere pretext. We are inclined to accept the statements of an officer of the court on face value.

The Court of Military Appeals has indicated that if post-trial proof of a trial counsel's motives becomes necessary, a "clearly articulated affidavit" might be sufficient to resolved a similar *Batson* issue on appeal. *Moore*, 28 M.J. at 368 n. 7. In *Moore*, the military judge decided *Batson* was not applicable to trial by court-martial and did not require the prosecution to state a race-neutral reason for its challenge. Additionally, the trial counsel declined the judge's invitation to explain his reason if he wished. This differs slightly from appellant's case where the judge neither required trial counsel to explain his reason nor offered him a chance to do so. Even if the military judge had erred by not requiring trial counsel to state a gender-neutral reason for his challenge, the trial counsel's affidavit convinces us that he had a proper basis which satisfied the Supreme Court's test in *J.E.B.*

## II. Military Judge's Failure to Grant Challenges for Cause

■ The standard by which we review the military judge's failure to grant a challenge for cause is clear abuse of discretion. *United States v. Dinatale*, 44 M.J. 325 (1996). Military judges should grant challenges for cause liberally, but we will not overturn the judge's determination except for a clear abuse of discretion in applying the liberal grant mandate. *United States v. Hamilton*, 41 M.J. 22 (C.M.A.1994), *cert. denied*, 513 U.S. 1084, 115 S.Ct. 738, 130 L.Ed.2d 640 (1995); *United States v. White*, 36 M.J. 284, 287 (C.M.A.1993), *cert. denied*, 510 U.S. 1090, 114 S.Ct. 918, 127 L.Ed.2d 212 (1994).

■ We find no basis in the record to question the military judge's refusal to grant challenges for cause against Lt Col H or Lt Col T. The military judge allowed civilian defense counsel tremendous latitude to fully develop all possible bases for challenge during his lengthy and detailed voir dire of the members. The judge's denial of appellant's cause challenges against the two members was fully supported by the record and was clearly not an abuse of his discretion.

## III and IV. Court Member's Failure to Disclose Information and Convening Authority's Failure to Order Post–Trial Hearing To Investigate Defense Allegation of Court Member Misconduct

There is simply no basis in the record to support the allegation that Lt Col H failed to disclose information. We see nothing misleading or deceitful in Lt Col H's responses to long, rambling, unfocused soliloquies by the civilian trial defense counsel, many of which were not even questions.

Appellant claims he learned after the trial that Lt Col H's wife, Lt Col B, had been removed from a prior court-martial for cause, because she had once been the victim of sexual harassment by a superior officer. He further claims Lt Col H deliberately failed to disclose this information. However, when Lt Col H, in response to a convoluted line of questions by civilian defense counsel, asked the defense counsel if there was an issue of sexual harassment in the case, civilian defense counsel responded by stating **"There is not. You can tell by the charge there."** (Emphasis added). In light of this, we see no reason why Lt Col H would have divulged possible information about his wife's experience.

Additionally, appellant claims Lt Col H failed to reveal that prior to the court-martial he had attended a briefing in which the wing commander had each subordinate commander state his opinion as to appropriate punishments for offenses such as fraternization. There is no evidence in the record to support that the meeting actually took place. Nor can we find any questions which would have caused Lt Col H to mention the wing commander's meeting, if it did occur.

Appellant's civilian defense counsel submitted three requests to the convening authority to convene a post-trial Article 39(a), UCMJ, session to investigate "misconduct" on the part of Lt Col H. In all his requests, appellant provided only unsubstantiated accusations of misconduct by Lt Col H. The convening authority responded to each of civilian defense counsel's requests and denied each of them on the basis that the allegations were unsubstantiated.

■ At no time did appellant provide the convening authority any evidence to support the allegations of member misconduct. As the convening authority accurately stated in his final response to civilian defense counsel:

I find your allegations to be identical to those raised in your 8 Sep 95 request and in your 2 Oct 95 request, and again determine those allegations to be unsubstantiated. The record of trial makes it apparent that Lt. Colonel H clearly and candidly answered those questions asked of him. Likewise, your request that I disqualify

myself as convening authority is also without merit. Both requests are denied.

Appellant had ample opportunity to back up his claims to the convening authority but failed to do so. The convening authority had no obligation to develop evidence to support appellant's allegations. He did not abuse his discretion by denying appellant's request based solely on civilian defense counsel's unsworn, unsubstantiated assertions. *See United States v. Tripp*, 38 M.J. 554, 560 (A.F.C.M.R.1993), *pet denied*, 40 M.J. 303 (C.M.A.1994).

We find appellant's allegations of member misconduct and that the convening authority erred by failing to granted his requested post-trial hearing to be without merit.

## V and VI. Improper Selection of Court Members

■ Appellant contends that the convening authority impermissibly selected an inordinate number of commanders and vice-commanders and used rank as a criterion for selecting replacement members. He also asserts that the base staff judge advocate (SJA) erred by excluding officers from appellant's unit, the Medical Group, from the list of nominees for his court panel. The base SJA, the numbered Air Force SJA, and the convening authority all testified extensively on the issue of member selection.

■ "Once the defense at trial raises an issue of institutional bias in the selection of court members to achieve a particular result, the burden shifts to the government to show by clear and positive evidence that no impropriety occurred." *United States v. Beehler*, 35 M.J. 502, 503 (A.F.C.M.R.1992), *pet. denied*, 38 M.J. 174 (C.M.A.1993).

The panel of 10 court members consisted of 5 commanders, a vice commander, a deputy commander, an operations officer and two others. The ranks of the members were four lieutenant colonels, three majors and three captains.

The base SJA explained that he excluded members of the Medical Group from the nominations submitted to the convening authority to prevent possible conflicts. Almost every one in that group would know appel-

lant and some might be familiar with the case or have discussed the case. The numbered Air Force SJA agreed with the decision not to submit Medical Group members as nominees.

The convening authority said he had not established a policy to exclude medical personnel but thought it to be a good idea to exclude persons who might be too close to the case. He was satisfied with the nominees he got and wasn't concerned about which units he didn't get nominees from. He was very familiar with the selection criteria of Article 25, UCMJ, and was satisfied as long as he got sufficient nominees who, in his judgment, met those criteria.

The convening authority provided detailed, convincing explanations for the reasons he did or did not pick certain members. We have previously held that the intentional inclusion of those in command positions on a court-martial does not invalidate the selection process. *Beehler*, 35 M.J. at 504. However, the convening authority testified that he did not consider whether an officer was a commander in making his selections. When he rejected certain senior nominees from consideration for valid reasons, he requested replacement nominees of similar ranks to keep the overall balance of nominee ranks relatively the same, a legally permissible desire. *United States v. Marsh*, 21 M.J. 445, 450 (C.M.A.1986). There was no evidence that he systematically excluded any eligible ranks from consideration for court membership. *See United States v. Yager*, 7 M.J. 171 (C.M.A.1979); *United States v. Daigle*, 1 M.J. 139 (C.M.A.1975).

The panel the convening authority selected was well balanced as to rank and clearly did not exclude eligible ranks from consideration. The military judge allowed civilian defense counsel wide latitude in questioning the convening authority and both SJAs. Their combined testimony consumed 78 pages of the record and provided convincing evidence of proper panel selection procedures.

The military judge found no impropriety in the court member selection process, stating:

> in making his selections, the convening authority was not specifically looking at any one particular characteristic as a re-

quirement of court membership.... He did not use command position as a criteria in making his selection.

He further found that:

> neither rank—other than that the selectees be senior to the accused—nor status as a commander were prerequisites for either nomination or for actual selection as panel members in the accused's case.

The military judge's findings are overwhelmingly supported by the record, and we find no reason to disturb them. The government established by clear and positive evidence that no impropriety occurred during member selection.

## VII. Factual and Legal Sufficiency of Convictions

 The test for legal sufficiency is whether, considering the evidence in the light most favorable to the prosecution, a reasonable fact finder could have found all essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In determining factual sufficiency, we must be convinced beyond a reasonable doubt by the evidence of record of appellant's guilt, bearing in mind that we did not personally observe the witnesses. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987).

 Appellant claims the required Article 134, UCMJ, element that adulterous conduct be prejudicial to good order and discipline or be service discrediting can't be established in his case, because he claims his affair with A1C B was private and unknown to others until A1C B reported it to command authorities in July 1995. Even if it were secret prior to her coming forward, the mere fact such secrets came to public view was sufficient. Also, appellant's sexual partner was an enlisted military member which itself could establish the contested element. *United States v. Collier*, 36 M.J. 501 (A.F.C.M.R.1992), *pet. denied*, 38 M.J. 461 (C.M.A.1993).

 Appellant further contends that he cannot be guilty of fraternization for the time frame after he ceased being A1C B's unit

commander. Relying on *United States v. Johanns*, 17 M.J. 862, 869 (A.F.C.M.R.1983), *aff'd*, 20 M.J. 155 (C.M.A.1985), he claims that his role as honor guard commander did not involve the type of command or supervision required for fraternization at the time of his offenses. At the time of appellant's offenses and his trial, we had removed the requirement for a command or supervisory relationship from the offense of fraternization. *United States v. Boyett*, 37 M.J. 872 (A.F.C.M.R.1993), *aff'd*, 42 M.J. 150 (1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 308, 133 L.Ed.2d 212 (1995).

However, even though not required to do so, the military judge chose to treat the fraternization offense under the more restrictive *Johanns* standard and submitted this additional element to the members as a fact question—a decision redounding decidedly to appellant's benefit. There was considerable evidence in the record on the authority of the honor guard commander, which supports the members' finding that, as honor guard commander, appellant exercised the type of command or supervision over A1C B required to establish fraternization under the *Johanns* standard.

We find that as to both adultery and fraternization, the evidence was legally sufficient. Like the members, we are convinced beyond a reasonable doubt that appellant was guilty of both offenses.

### VIII. Request for New Staff Judge Advocate's Recommendation and Convening Authority's Action

■ The first SJA prepared a Staff Judge Advocate's Recommendation (SJAR) and served it on appellant and his civilian defense counsel pursuant to Rule for Courts–Martial (R.C.M.) 1106. Civilian defense counsel filed a timely response to that recommendation pursuant to R.C.M. 1105. This response alleged legal errors concerning the legal and factual sufficiency of the convictions, challenged the severity of the sentence, and requested the convening authority disqualify himself and his staff judge advocate. The convening authority denied the request to disqualify himself but did disqualify his entire legal office. This made the initial SJAR void. A second SJA, from a different

legal office, prepared a new SJAR and served it on civilian counsel. Following an extension of time to respond, appellant failed to submit any response to the second and final SJAR. Appellant thereby waived any later claim of error in the absence of plain error. R.C.M. 1106(f)(6). We find no plain error.

Appellant claims it was unreasonable for the second SJA not to consider the legal issues he had submitted in response to the first SJAR. The second SJAR, which was properly served on appellant, contained no mention of or reference to appellant's prior response. Appellant was, thereby, put on fair notice that his earlier submissions were not being considered by the second SJA, and it was appellant's obligation to submit any matter he wished the convening authority to consider.

Even if we agreed with appellant's position that the second SJA erred by failing to address the matters raised earlier, we find that the errors alleged for consideration by the convening authority are without merit and, as such, would not have affected the ultimate outcome of the case. We find no prejudice to appellant, and a new SJAR and action are not required. *United States v. Welker*, 44 M.J. 85, 89 (1996); *United States v. Green*, 44 M.J. 93, 95 (1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 371, 136 L.Ed.2d 261 (1996); *United States v. Hill*, 27 M.J. 293, 296 (C.M.A.1988).

■ Finally, appellant contends that the SJAR is deficient because it failed to summarize his character of service as required by R.C.M. 1106(d)(3)(C). Appellant's failure to comment on the SJAR waived his right to later claim such error unless there were plain error. R.C.M. 1106(f)(6). Although the SJAR contained no specific description of appellant's service, the personal data sheet attached to the SJAR provided sufficient information on appellant's service record including his length of service, his combat service, awards, decorations and lack of a prior disciplinary record. Also, in his response to the void SJAR, appellant did highlight his "outstanding enlisted and officer military record." The convening authori-

ty's act of disqualifying his legal office convinces us he considered that submission. The convening authority had sufficient information on the character of appellant's service to satisfy the requirements of R.C.M. 1106(d), and we find no plain error. *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 1777–78, 123 L.Ed.2d 508 (1993).

The approved findings of guilty and the sentence are correct in law and fact, and on the basis of the entire record, are

AFFIRMED.

Senior Judge PEARSON and Judge MORGAN, C.H., concur.