**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Senior Airman VEON D. SELMAN**
**United States Air Force**

**ACM 38626**

**1 May 2015**

Sentence adjudged 25 March 2014 by GCM convened at Eielson Air Force Base, Alaska. Military Judge: Christopher M. Schumann (sitting alone).

Approved Sentence: Bad-conduct discharge, confinement for 15 months, and reduction to E-1.

Appellate Counsel for the Appellant: Major Anthony D. Ortiz and Brian L. Mizer, Esquire.

Appellate Counsel for the United States: Major Roberto Ramírez and Gerald R. Bruce, Esquire.

Before

ALLRED, HECKER, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA of Practice and Procedure 18.4.

TELLER, Judge:

The appellant was convicted by a military judge sitting alone, in accordance with his pleas, of failure to obey a lawful general order, distribution of hydrocodone and cocaine, use of cocaine, and attempted manufacture of cocaine[1] in violation of Articles 92 and 112a, UCMJ, 10 U.S.C. §§ 892, 912a. The court sentenced him to a bad-conduct

---

[1] Although the appellant pled guilty to manufacturing cocaine with the intent to distribute, the military judge found his plea of guilty to that specification improvident and found him guilty only of attempted manufacture with the intent to distribute.

discharge, confinement for 15 months, and a reduction to E-1. The sentence was approved as adjudged.

On appeal, the appellant contends: (1) the military judge erred by not fully inquiring about the defense counsel's representation of another Airman on indirectly related charges; (2) due to that representation, a post-trial hearing should be ordered to ascertain whether trial defense counsel's performance was deficient; (3) his guilty plea to manufacturing cocaine, which supported the military judge's finding of guilt to the lesser included offense of attempted manufacture of cocaine, was improvident both as to the offense charged and the lesser included offense; (4) a rehearing should be ordered because the staff judge advocate advising the special court-martial convening authority on the preferral and forwarding of charges was a victim in this case and gave victim-impact testimony at appellant's court-martial; and (5) he was subjected to illegal pretrial punishment.

*Background*

The appellant was a security forces patrolman assigned to Eielson Air Force Base, Alaska. In late summer and fall of 2013, an investigation by the Air Force Office of Special Investigations (AFOSI) implicated the appellant in the sale of prescription narcotics and a scheme to buy, dilute, and resell cocaine.

In early September 2013, an Airman working as an AFOSI informant asked the appellant if he would sell him some of his prescribed hydrocodone (Vicodin). After the appellant said he would get back to him, the informant then suggested to another subject, Airman Bragassa, that the appellant might sell him the medication. Airman Bragassa contacted the appellant and purchased 10 Vicodin pills from him. In the course of this transaction, Airman Bragassa told the appellant he planned to distribute some of the pills to another Airman, who, unbeknownst to the appellant and Airman Bragassa, was also an AFOSI informant. The appellant contacted that Airman and eventually sold him 10 Vicodin pills. For this, the appellant pled guilty to distributing hydrocodone on divers occasions.

After those transactions, AFOSI arranged to have the two informants approach the appellant about obtaining and distributing other narcotics. The informants told the appellant they had contacts interested in buying drugs, and could supply the money if the appellant could obtain the drugs. The plan that eventually emerged entailed the informants providing $300 each, which the appellant would use to buy cocaine from a civilian supplier. The Airmen would then dilute that cocaine, using instructions the appellant found on the Internet, to essentially double the product and make a profit. The appellant asked the informants to find a location to process the cocaine and told them to pick up certain supplies.

After the informants rented a hotel room in nearby North Pole, Alaska, AFOSI secretly installed video recording equipment in the room. The appellant bought the cocaine and brought it to the informants' room where he tested it by placing a small amount on his tongue. He handed the cocaine to one of the informants and began preparing a mixture of baking soda and water, which was going to be used to cut the cocaine. All this activity was recorded on video. As the appellant was preparing the baking soda, AFOSI agents entered the room and took the appellant into custody. The appellant pled guilty to using and distributing cocaine. He also pled guilty to manufacturing cocaine with the intent to distribute, but the military judge found his guilty plea to this specification improvident and found him guilty only of attempted manufacture with the intent to distribute.

While the appellant was awaiting trial, his mother asked him what he knew about the lawyers who were defending and prosecuting the case. The appellant used his access to the base personnel roster to obtain a list of the legal office staff, including their social security numbers, and e-mailed the list, along with the names of his defense team, to his mother. There was no evidence that the information was ever misused. For this, the appellant pled guilty to failing to obey a lawful general regulation, Air Force Instruction 33-332, *Air Force Privacy and Civil Liberties Program* (5 June 2013), by wrongfully transmitting individuals' social security numbers to a personal e-mail account.

*Conflict of Interest Inquiry*

The day before the appellant's court-martial, Airman Bragassa pled guilty before the same military judge to various offenses involving illegal drugs, as well as prescription and over-the-counter medication. He was represented by the same senior defense counsel (SDC) who represented the appellant. The appellant asserts that the military judge erred by not conducting a more extensive inquiry into the SDC's potential conflict of interest in representing both Airmen. He argues the court should remand the case for additional fact-finding regarding the existence and impact of any conflict.

"It is well settled that conflicts of interest are analyzed under the 'ineffective assistance of counsel' rubric . . . ." *United States v. Lee*, 66 M.J. 387, 391 (C.A.A.F. 2008) (Ryan, J., dissenting). Allegations of conflicts of interest during ineffective assistance of counsel inquiries are reviewed de novo. *United States v. Sales*, 56 M.J. 255, 258 (C.A.A.F. 2002); *United States v. Smith*, 36 M.J. 455 (C.M.A. 1993) (applying a de novo-level review to a conflicting interest claim).

As a general rule, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Strickland v. Washington*, 466 U.S. 668, 692 (1984). One exception to the general rule is that such prejudice is presumed "when counsel is burdened by an actual conflict of interest." *Id* (citing *Cuyler v. Sullivan*, 466 U.S. 335, 345–50 (1980)). The Supreme Court has interpreted an actual conflict of interest in this context to be "a conflict *that*

*affected counsel's performance* -- as opposed to a mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002) (emphasis in original).

Accordingly, in order to find a Sixth Amendment[2] violation based on a conflict of interest, the appellant must show that (1) counsel actively represented conflicting interests and (2) the actual conflict of interest adversely affected counsel's performance. *Cuyler*, 446 U.S. at 349–50; *see also Smith*, 36 M.J. at 457 (Crawford, J., concurring). Our superior court has established a rebuttable presumption that the first element of the test is established whenever there is multiple representation and the military judge has not conducted a suitable inquiry[3] on the record. *See United States v. Breese*, 11 M.J. 17, 23 (C.M.A. 1981)). The absence of an inquiry "does not reduce the [appellants]'s burden of proof; . . . [the appellant must still] establish that the conflict of interest adversely affected his counsel's performance." *Mickens*, 535 U.S. at 173–74.

In this case, the record contains no indicia that the presumed conflict adversely affected the SDC's performance, and the appellant has pointed to none. Although the military judge did not conduct a sufficient inquiry to establish knowing and intelligent waiver of conflict-free counsel, he did address the potential conflict briefly on the record:

> [Military Judge]: Airman Selman, I don't necessarily . . . I don't need to know what you talked about with your current lawyers, but I'm assuming that, in the process of your discussions with them, you understood that [the SDC] participated in yesterday's case with regard to Airman Bragassa?
>
> [Appellant]: Yes, sir.
>
> [Military Judge]: Her participation in that case doesn't, in any way necessarily, prohibit her from defending you, as long as she is capable and able to fully represent your interest in this case, without any allegiance to her

---

[2] U.S. CONST. amend. VI.

[3] Where the potential for a conflict of interest arises due to multiple representation, the military judge must inquire into that potential for conflict. *See United States v. Smith*, 36 M.J. 455, 457 (C.M.A. 1993). An accused may waive his right to conflict-free counsel, but waivers must be voluntary, and they must be "knowing intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *United States v. Lee*, 66 M.J. 387, 388 (C.A.A.F. 2008) (quoting *United States v. Davis*, 3 M.J. 430, 433 n.16 (C.M.A. 1977)) (internal quotation marks omitted). The military judge "should inquire of the accused whether: (1) He has been advised of the right to effective representation; (2) He understands the reasons for the attorney's possible conflict of interest and the dangers of the conflict; (3) He has discussed the matter with his attorney or if he wishes with outside counsel; and (4) He voluntarily waives his Sixth Amendment protection." *United States v. Dorman*, 57 M.J. 539, 543 (A.F. Ct. Crim. App. 2002) (citing *United States v. Breese*, 11 M.J. 17, 22 (C.M.A. 1981)).

attorney/client relationship with Airman Bragassa. Do you understand that?

[Appellant]: Yes, sir.

[Military Judge]: And I'll give [the SDC] an opportunity here in a second to be heard, but the question is, whether or not . . . ultimately, is whether or not you have any concerns about her representing you and whether or not she's representing you in your best interest. So, [SDC], I'll give you an opportunity to at least be heard on that issue if you'd like?

[SDC]: Sir, Your Honor, I don't see any conflict whatsoever. I just I talked to . . . or actually, I had my [area defense counsels] talk to both clients out of an abundance of caution and got it, in writing,[4] that they were fine with that. Again, you know, Airman Selman seemed [Inaudible.] in the trial, and I don't see how my representation of Airman Selman is somehow inhibited by my representation of Airman Bragassa.

[Military Judge]: Okay. Airman Selman, do you have any concerns at all with [the SDC] representing you, in this case, despite her connection to that previous case yesterday?

[Appellant]: No, sir.

The area defense counsel was present for the colloquy and made no objection or effort to correct or qualify the SDC's assertions.

In the absence of a specific assertion of adverse effect by the appellant, we examined the record for evidence that the conflict affected the SDC's performance. There is no indication that the SDC's representation of Airman Bragassa inhibited her recommendations with regard to his plea or overall trial strategy. The appellant pled

---

[4] No written waiver of conflict-free counsel was made part of the record of trial.

guilty to distributing hydrocodone on two occasions, one of which involved a sale to Airman Bragassa. AFOSI had surveillance photos of the appellant's distribution of Vicodin to the informant, and the government introduced evidence during the Article 32, UCMJ, 10 U.S.C. § 832, hearing of possible distribution to another Airman that was never raised during the guilty plea inquiry. Accordingly, a plea with regard to the specification involving Airman Bragassa was reasonable in light of the likely evidence and may have avoided the admission of evidence of additional misconduct. During a different part of the inquiry, the SDC asserted the appellant's desire to take responsibility for his actions as the reason for his decision not to contest the charge of completed rather than attempted manufacture of cocaine. We have no reason to question that strategy characterization by counsel.

We also examined whether the SDC's duty to Airman Bragassa foreclosed potential avenues of argument or cross-examination of government witnesses in the appellant's case. The potential adverse impact that might arise when counsel is prevented from arguing that a co-actor (whom she also represents) bears a greater share of the blame is rendered moot when the client pursues a strategy of taking full responsibility for the misconduct alleged. Here, trial defense counsel even successfully elicited testimony suggesting that the appellant's distribution to Airman Bragassa was brought about by AFOSI, allowing her to argue from an independent source of testimony that the appellant was induced into the distribution and therefore less culpable. We see no evidence that the SDC's performance in the appellant's case was affected adversely by her representation of Airman Bragassa.

This case is distinguishable from *United States v. Smith*, where our superior court ordered a post-trial fact-finding hearing to resolve factual issues related to a potential conflict of interest. In *Smith*, trial defense counsel disclosed to the military judge that he had previously represented Sergeant Lawrence, a likely government witness. Sergeant Lawrence's potential testimony was relevant to Smith's intent to permanently deprive the Air Force of computer equipment, the only contested issue at the trial. Although the parties agreed to a stipulation of certain facts, the defense raised, then later withdrew, an objection to any mention of Sergeant Lawrence in the stipulation. On appeal, the Court of Appeals for the Armed Forces ordered a post-trial fact-finding hearing to "resolve the question of multiple representation," or, in the alternative, a complete rehearing of the case. *Smith*, 36 M.J. at 457. The court held that "[a]n unrebutted *Breese* presumption is sufficient . . . to require further inquiry." *Id.* The court explained, however, "[a]lthough defense counsel revealed that he had represented Sergeant Lawrence, the record does not reflect the nature and extent of that representation or whether that representation involved a criminal proceeding or was in any way related to appellant's case." *Id.*

In this case, the nature of the SDC's representation was fully developed in the record. The SDC represented another client in a criminal trial related to one of the drug transactions alleged against the appellant, so the *Breese* presumption applies. However,

independent of that presumption, the appellant must still show his counsel's performance was adversely affected by the dual representation. *See Mickens*, 535 U.S. at 173–74.

The appellant suggests that *Smith* stands for the proposition that in any case where the military judge's inquiry into a possible conflict of interest is deficient, an appellate court should order what amounts to a performance review of trial defense counsel, inquiring whether there was any deficiency, and whether such deficiency was related to the multiple representation. We do not read *Smith* so broadly. The *Smith* court remanded the case so that the convening authority could decide whether to order a hearing "to resolve the question of multiple representation or order a rehearing on the findings and sentence." *Smith*, 36 M.J. at 457. The court also discussed what subsequent proceedings might be appropriate depending upon the findings:

> If the judge in the *DuBay* hearing determines (1) that there was multiple representation; (2) that there was an actual conflict of interest; and (3) that the conflict of interest adversely affected counsel's representation of appellant, the judge shall set aside the findings and sentence and return the record to the convening authority for a decision whether to order a rehearing on the findings and sentence. If the judge in the *DuBay* hearing finds (1) no multiple representation; or (2) no actual conflict of interest; or (3) an actual conflict of interest but no adverse effect on counsel's representation of appellant, the record will be returned to the Judge Advocate General of the Air Force for submission to the Court of Military Review for further review under Article 66, UCMJ, 10 USC § 866. Thereafter, Article 67, UCMJ, 10 USC § 867, shall apply.

*Smith,* 36 M.J. at 457–58. *Smith*, therefore, clearly supports the proposition that once a hearing is required to determine whether multiple representation occurred, the related question of adverse impact should be resolved at the same hearing.

This case presents a narrower question. The court must decide, having found that multiple representation occurred and that the military judge failed to conduct a sufficient inquiry, whether the appellant is automatically entitled to a fact-finding hearing to review trial defense counsel's performance, or whether, under *Strickland* and *Mickens*, the appellant must provide some evidence that the conflict affected counsel's performance before the court must order a hearing.

In asserting a claim of ineffective assistance of counsel, including conflicted counsel, the appellant must identify the acts or omissions of counsel that are alleged to constitute deficient performance. *Strickland*, 466 U.S. at 690. The appellant in this case

has failed to specify any acts or omissions in his assignment of errors and he has made no claim of ineffective assistance of counsel on appeal. *See United States v. Lindsey*, 48 M.J. 93, 99 (C.M.A. 1998). Nor has the appellant submitted an affidavit or declaration that would provide facts from which this court could find such adverse impact. Such an affidavit normally provides the initial assertion of fact that triggers the analysis of whether a hearing is necessary. *See United States v. Parker*, 36 M.J. 269, 272 (C.M.A. 1993). In this case, we have no such trigger. Instead, we have only an unsupported conclusion in the appellant's assignment of errors that the existence of multiple representation should trigger a hearing into the SDC's representation of the appellant. Such assertions in argument are insufficient to require a hearing in other cases alleging ineffective assistance of counsel. *See United States v. Moulton*, 47 M.J. 227, 230 (C.A.A.F. 1997). We find no reason to apply a different rule in the specific area of multiple representation. The appellant has the burden to make that initial showing of impact, and the appellant here has not even identified a single basis for that claim, much less provided evidence of it.

We are also guided by our superior court's holding in *United States v. Ellis*, 47 M.J. 20, 22 (C.A.A.F. 1997), expressing the court's reluctance to order an explanation from a trial defense counsel "until appellant *personally* (not merely through argument of appellate counsel) attacks his counsel." (Emphasis in original). Although the invasion of the attorney-client relationship considered by the *Ellis* court concerned declarations, we find that rationale persuasive in the context of the post-trial hearing requested here as well.

We find that a fact-finding hearing in this case is not necessary or appropriate. The appellant has failed to meet his burden under *Strickland* and this assignment of error is without merit.

*Providence of Plea to Attempted Manufacture of Cocaine*

The appellant also asserts that his guilty plea to manufacturing cocaine, which supported the military judge's finding of guilt to the lesser included offense of attempted manufacture of cocaine, was improvident both as to the offense charged and the lesser included offense.

A military judge must determine whether an adequate basis in law and fact exists to support a guilty plea by establishing on the record that the "acts or the omissions of the accused constitute the offense or offenses to which he is pleading guilty." *United States v. Care*, 40 C.M.R. 247, 253 (C.M.A. 1969). A military judge's acceptance of a guilty plea is reviewed for an abuse of discretion, and questions of law arising from the plea are reviewed de novo. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). We grant significant deference to the military judge's determination that a factual basis exists to support the plea. *Id*. (citing *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F. 2002)). Rejection of a guilty plea requires that the record show a substantial basis in law

and fact for questioning the providence of the plea. *Inabinette*, 66 M.J. at 322 (citing *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)).

The appellant argues that his planned "combination of baking soda and cocaine would have produced more of a substance, [but] would not have resulted in or 'made' cocaine, which is all that may be punished under the manufacturing provision of Article 112a, UCMJ."[5] The appellant cites for this proposition an unpublished summary disposition by the Army Court of Criminal Appeals and Black's Law Dictionary. The appellant acknowledges that the *Manual for Courts-Martial, United States* (*MCM*), Part IV, ¶ 37.c.(4) (2012 ed.), defines manufacture much more broadly. We find the definition in the *Manual* is the more accurate statement of the law, and hold that the appellant's plea was provident.

Congress did not explicitly define "manufacture" in the UCMJ, so we apply the normal rules of statutory construction to derive its meaning. Our superior court has turned to the Controlled Substances Act, 21 U.S.C. §§ 801, *et. seq.*, in determining Congress' intent in Article 112a, UCMJ. *See United States v. Speer*, 40 M.J. 230, 232 n.1 (C.M.A. 1994) (defining "distribute" with reference to legislative history of Article 112a, UCMJ, that indicates a heavy reliance on the Controlled Substances Act); *United States v. Dillon*, 61 M.J. 221, 223 (C.A.A.F. 2005) (examining 21 U.S.C. § 841 to define "controlled substance" under Article 112a, UCMJ); *see also United States v. Chenery*, 29 M.J. 565, 567 (A.F.C.M.R. 1989) (referring to 21 U.S.C. § 802 to resolve claim of multiplicity for distribution and manufacture of cocaine), *United States v. Omick*, 30 M.J. 1122, 1124 (N.M.C.M.R. 1989) (using 21 U.S.C. § 802(11) in establishing meaning of "distribute" under Article 112a). The Controlled Substances Act defines manufacture as:

> [T]he production, preparation, propagation, compounding, or processing of a drug or other substance, either directly or indirectly or by extraction from substances of natural origin, or independently by means of chemical synthesis or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of such substance or labeling or relabeling of its container . . . .

21 U.S.C. § 802(15). Additionally, the President, in Part IV, paragraph 37(c)(4) of the *Manual*, incorporated this definition for "manufacture" from 21 U.S.C. § 802. *See* Drafter's Analysis, *MCM*, A23-13 (2012 ed.). The military judge advised the appellant of this definition during the providence inquiry.

---

[5] We note that Article 112a(b)(1), UCMJ, 10 U.S.C. § 912a(b)(1), explicitly criminalizes not only the manufacture of cocaine itself, but also the manufacture of "any compound or derivative" of cocaine. However, since the accused was found guilty of attempted manufacture of cocaine itself, we assess his plea in that context.

Applying that definition to this case, we find that the appellant's plea was provident as to the lesser included offense of attempted manufacture of cocaine. In the providence inquiry, the appellant admitted bringing the cocaine to the hotel room with the specific intent of compounding it with baking soda to increase the overall amount of product they could sell. Compounding the cocaine with another substance falls explicitly within the meaning of manufacture as set out by Congress in the Controlled Substances Act and adopted by the President in the *Manual*. We find no substantial basis in law or fact for questioning the providence of the plea.

*Role of the Staff Judge Advocate*

The appellant also claims that a rehearing should be ordered because the staff judge advocate (SJA) advising the special court-martial convening authority on the preferral and forwarding of charges was a victim in this case and gave victim-impact testimony at his court-martial. This issue was not raised at trial nor during the clemency process.

When an issue is forfeited by failure to raise it during the trial,[6] it is subject only to plain error review. *United States v. Harcrow*, 66 M.J. 154, 156 (C.A.A.F. 2008). Under a plain error analysis, the appellant must demonstrate that "(1) there was error; (2) the error was plain and obvious; and (3) the error materially prejudiced a substantial right of the [appellant]." *United States v. Clifton*, 71 M.J. 489, 491 (C.A.A.F. 2013) (citing *United States v. Powell*, 49 M.J. 460, 464–65 (C.A.A.F. 1998)). The appellant bears the burden of establishing plain error. *United States v. Hardison*, 64 M.J. 279, 281 (C.A.A.F. 2007).

Based upon the record before us, we find no error, plain or otherwise. It is clear that the 354th Fighter Wing SJA was a victim of the conduct alleged in the Article 92, UCMJ, charge, as her social security number was included in the e-mail sent to the appellant's mother. Also, we assume without deciding that after she became aware of that offense, she could not properly act as the SJA in the appellant's case. *See* Rule for Courts-Martial 1106, Discussion ("The staff judge advocate . . . may . . . be ineligible when, for example, [she] . . . has other than an official interest in the same case . . . .").

However, the record contains no evidence that she served in such a role after the conflict arose. In particular, with regard to the appellant's assertion that the 354th Fighter Wing SJA advised the special court-martial convening authority on the preferral and forwarding of charges, the record indicates otherwise. The charge sheet indicates that a judge advocate from the 673d Air Base Wing at Joint Base Elmendorf-Richardson administered the oath supporting the preferral of charges. The 673d Air Base Wing SJA

---

[6] In the absence of any evidence that the appellant knowingly declined to assert this claim at trial, we consider it forfeited and not waived. *See United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (noting a forfeiture is "the failure to make the timely assertion of a right").

signed for the receipt of charges on behalf of the special court-martial convening authority and detailed the trial counsel in the case.

The appellant has offered no evidence of actual consultation between the 354th Fighter Wing SJA or her staff and the special court-martial convening authority after the e-mail issue occurred in mid-December 2013. Instead, counsel seems to infer the existence of such consultation from the SJA's testimony, during the pre-sentencing phase, concerning her involvement:

| | |
|---|---|
| [Trial Counsel:] | Ma'am, I'm going to ask, how are you involved in this case today? |
| [SJA:] | Well, as the Staff Judge Advocate, I obviously advise the wing commander as well as the commanders; so, when this broke, my staff, my chief of justice, et cetera, they were advising OSI and I was advising the commanders as well as the convening authority, at least the special court-martial convening authority. |
| [Trial Counsel:] | Okay. And when did you . . . approximately when was that, ma'am? |
| [SJA:] | That was the later part of last year, so September, October, November timeframe . . . that's when it started anyway. |
| [Trial Counsel:] | At some point, were you notified that there was another issue in this case involving you specifically? |
| [SJA:] | Yes, in December of 2013. |
| [Trial Counsel:] | What was that issue? |
| [SJA:] | I . . . got a notification . . . [that] an e-mail [sent by Airman Selman] contained my social security number as well as eight other of my staff members . . . . |

We are convinced that the SJA's description of her role in this case pertained to the period of time before she became aware of the 16 December 2013 e-mail that transmitted her own and her staff's personal information. We find that the appellant failed to meet

11                                                                      ACM 38626

his burden to establish error, and absent evidence in the record that she improperly advised a convening authority, any error that did occur was not plain error.

*Illegal Pretrial Punishment*

While awaiting trial, members of the appellant's unit participated in five actions that the appellant argues constituted illegal pretrial punishment. The parties presented testimony on the issue, and the military judge made substantial findings of fact, which were not clearly erroneous. We adopt the following facts, summarized from the military judge's ruling on the motion, pursuant to our fact-finding authority under Article 66, UCMJ, 10 U.S.C. § 866.

At some point after the investigation began in September 2013, the appellant was given a no-contact order prohibiting any contact with 17 members of the unit. It also directed him not to come within a certain distance of specified security forces buildings. Subsequent to that order, he was detailed to the Civil Engineer Squadron and relocated his dorm room to that unit's dormitory.

For approximately one week in September 2013, the appellant and several other Airmen who had been relieved of duty were required to stand outside the security forces building at 1650 where they were directed to observe retreat. This group was referred to in testimony as the "ROD squad" in an apparent reference to their "relieved of duty" status. They were required to adhere to the normal customs of standing at attention and saluting during the playing of the national anthem. The only individuals required to participate during that week were those suspected of misconduct.

While detailed to the Civil Engineer Squadron, the appellant was not allowed to play on security forces intramural sports teams, but was allowed to play on the Civil Engineer team. The appellant's commander sent an e-mail to the Civil Engineer Squadron commander suggesting that he not permit the appellant to play on that squadron's teams either. During one intramural basketball game outside the presence of the appellant, the appellant's commander told a noncommissioned officer serving as a referee, "you're Selman's boy," or words to that effect. That exchange was followed by other comments in the hearing of unit members that the appellant would be "getting locked up" or words to that effect.

On 17 December 2013, a senior noncommissioned officer assigned to security forces sent out a squadron-wide e-mail saying that a member of the squadron "with an ASVAB score lower than dirt" had been caught sending personally identifying information (PII) via e-mail. Although the appellant had engaged in that activity the previous day, the appellant was not mentioned by name, nor were any specific details of the alleged offense included in the e-mail.

One day in March 2014, after the appellant's detail to the Civil Engineer Squadron had ended, he and at least one other Airman who had been relieved of duty were required to break up a patch of ice covering the length of a sidewalk outside the security forces building. The sidewalk was being cleared in anticipation of the arrival of a general officer who was scheduled to conduct a commander's call in the building. After repeated attempts, the sidewalk was cleared to the satisfaction of command, and the individuals were excused and not required to attend the commander's call.

Article 13, UCMJ, 10 U.S.C. § 813, provides in part, "[n]o person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances required to insure his presence." Courts have identified two types of activities that violate this provision: "(1) the intentional imposition of punishment on an accused prior to trial, i.e., illegal pretrial punishment; and (2) pretrial confinement conditions that are more rigorous than necessary to ensure the accused's presence at trial, i.e., illegal pretrial confinement." *United States v. Fischer*, 61 M.J. 415, 418 (C.A.A.F. 2005). In this case, since the appellant was not confined, only intentional imposition of punishment is at issue.

Generally, the question of whether an "appellant is entitled to credit for a violation of Article 13 is a mixed question of fact and law." *See United States v. Mosby*, 56 M.J. 309, 310 (C.A.A.F. 2002). We review findings of fact under a clearly erroneous standard and the ultimate question of whether the appellant is entitled to credit under Article 13, UCMJ, de novo. *See Fischer*, 61 M.J. at 418; *Mosby*, 56 M.J. at 310; *United States v. Smith*, 53 M.J. 168, 170 (C.A.A.F. 2000). The appellant bears the burden of establishing his entitlement to credit. *See Fischer*, 61 M.J. at 418.

The military judge affirmatively found no intent to punish with regard to each of the instances cited in the assignment of error. Those findings were not clearly erroneous. They were supported by some evidence with regard to each action which could reasonably support the military judge's conclusion.

Irrespective of any intent to punish, Article 13, UCMJ, is violated if the activity at issue serves no legitimate, non-punitive purpose. *See Smith*, 53 M.J. at 172. Accordingly, the question before this court is whether there was there any legitimate, non-punitive purpose for each action the appellant asserts as illegal pretrial punishment. While the e-mail reminder not to transmit PII via e-mail and the ice removal detail each have an easily discernable non-punitive purpose, the remaining three actions cited on appeal merit further analysis.

The appellant argues that the requirement to stand outside the security forces building for retreat served only a punitive purpose. The first sergeant testified that he required those relieved of duty to report to his office to ensure accountability and

exchange information with those personnel.  He incorporated the retreat requirement into that daily routine.  The military judge found that the first sergeant "required individuals to participate in retreat in an effort to boost their morale and provide them with an opportunity to reflect on their situation and hopefully motivate them in a positive manner."  Military ceremonies are often used in furtherance of that objective.  We find that the first sergeant's stated purpose did constitute a legitimate, non-punitive purpose for the informal retreat formations in the manner in which they were conducted here.

Similarly, we find that there was a legitimate, non-punitive purpose for any restrictions on the appellant's ability to play on the squadron intramural team.  Such teams represent the squadrons with which they are affiliated.  To the extent members of the team fail to meet conduct or performance standards, such failure reflects on the unit.[7]  In this case, there was sufficient information available to the commander to support an administrative decision to restrict the appellant's representation of the squadron in intramurals and other activities pending the outcome of the investigation.

Conversely, we find no legitimate, non-punitive purpose behind the commander's disparaging comment during the basketball game.  First, we distinguish between disparaging comments made towards the referee which happened to refer to the appellant and those which were actually disparaging towards the appellant.  We find that any comment that the referee was "Selman's boy" in that context would be unprofessional and disparaging towards the referee, but not disparaging towards the appellant.  The comment that the appellant would be "getting locked up," or words to that effect, carried an inescapable disparaging implication that the appellant was a criminal.  While the harm in a single disparaging comment outside the appellant's presence to a limited number of Airmen is small, it is not insignificant.  Not every perceived slight or sidelong glance constitutes punishment, but commanders in particular, because of their role in the military justice system, have a higher responsibility not to engage in gratuitous negative comments about an accused.

We find that the appellant should have received relief for one day of unlawful pretrial punishment for the day that the commander made public disparaging comments suggesting that the appellant was a criminal.  Where Article 13, UCMJ, violations involve illegal pretrial punishment without confinement, the military judge must take those facts into consideration when determining an appropriate sentence.  *See United States v. Cruz*, 25 M.J. 326, 331 (C.M.A. 1987).  Since the military judge found no illegal pretrial punishment, and therefor did not consider what impact such punishment should have on the appellant's sentence, we must either return the case for a sentence rehearing or reassess the sentence ourselves.

---

[7] We acknowledge the irony of upholding the restriction of team membership on the basis of professional conduct in light of the testimony regarding the commander's own behavior during one of these games.  However, any unprofessionalism on his part during intramurals does not invalidate the objectively rational purpose of restricting team membership to those meeting fundamental standards of conduct.

*Sentence Reassessment*

This court has "broad discretion" when reassessing sentences. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). However, before reassessing a sentence, we must be confident "that, absent the error, the sentence would have been of at least a certain magnitude." *United States v. Doss*, 57 M.J. 182, 185 (C.A.A.F. 2002) (citing *United States v. Sales*, 22 M.J. 305, 307 (C.M.A. 1986)). A "dramatic change in the 'penalty landscape'" lessens our ability to reassess a sentence. *United States v. Riley*, 58 M.J. 305, 312 (C.A.A.F. 2003). Ultimately, a sentence can be reassessed only if we "confidently can discern the extent of the error's effect on the sentencing authority's decision." *United States v. Reed*, 33 M.J. 98, 99 (C.M.A. 1991), aff'd, 36 M.J. 43 (C.M.A. 1992) (mem.). Even within this limit, the court must determine that a sentence it proposes to affirm is "appropriate," as required by Article 66(c), UCMJ, 10 U.S.C. § 866(c). In short, a reassessed sentence must be purged of prejudicial error and also must be "appropriate" for the offense involved. *Sales*, 22 M.J. at 307–08.

In light of the military judge's determination that the commander had no punitive intent, we are confident that he would have awarded no more than three-for-one credit for the day the appellant was subjected to illegal pretrial punishment. In the context of the appellant's 15-month sentence, that change does not constitute a dramatic change in the penalty landscape. Accordingly, we reassess the sentence to a bad-conduct discharge, confinement for 453 days,[8] and reduction to E-1. We are confident that such sentence "is no greater than that which would have been imposed if the prejudicial error had not been committed." *United States v. Suzuki*, 20 M.J. 248, 249 (C.M.A. 1985). If the appellant's term of confinement has been served prior to this decision taking effect, we direct the restoration of any pay and allowances that might have been forfeited under Article 58b, UCMJ, 10 U.S.C. § 858b, during confinement attributable to any sentence in excess of 453 days.

*Conclusion*

The approved findings and the sentence, as reassessed, are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

---

[8] Confinement of 15 months that commenced on 25 March 2014 consisted of 456 consecutive days.

Accordingly, the findings and sentence, as reassessed, are AFFIRMED.

FOR THE COURT

LEAH M. CALAHAN
Deputy Clerk of the Court